UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDNA ADAMS,

                Plaintiff,          Civil Action No. 16-11425
                                          Honorable Thomas L. Ludington
                                          Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [19, 23]**

Plaintiff Edna Adams ("Adams") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [19, 23], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

## I.      RECOMMENDATION

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Adams is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [23] be GRANTED, Adams' Motion for Summary Judgment [19] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision be AFFIRMED.

## II.     REPORT

### A.    Procedural History

On July 24, 2012, Adams filed an application for DIB, alleging a disability onset date of

May 1, 2010.[1]  (Tr. 111-17).  This application was denied initially on December 28, 2012.  (Tr. 77-80).  Adams filed a timely request for an administrative hearing, which was held on April 2, 2014, before ALJ Michael Dunn.  (Tr. 23-60).  Adams, who was represented by attorney Barry Keller, testified at the hearing, as did vocational expert Annette Holder.  (*Id.*).  On July 30, 2014, the ALJ issued a written decision finding that Adams was not disabled under the Act on or before December 31, 2012 (her date last insured).  (Tr. 8-19).  On February 18, 2016, the Appeals Council denied review.  (Tr. 1-3).  Adams timely filed for judicial review of the final decision on April 20, 2016.  (Doc. #1).

### B.  Framework for Disability Determinations

Under the Act, DIB is available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §423(d)(1)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:   If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in

---

[1] Adams' date last insured is December 31, 2012.  (Tr. 10).  Thus, she must establish disability on or before that date in order to be entitled to DIB.

the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### C. Background

#### 1. Adams' Reports and Testimony

At the time of the hearing, Adams was 54 years old, and at 5'10" tall, weighed 235 pounds. (Tr. 29, 129, 140). She had completed high school and earned a certificate in computer programming. (Tr. 29, 130). At the time of the hearing, Adams was divorced with an adult son and living alone. (Tr. 28-29, 150). Previously, she worked as a retail manager at both Target and K-Mart; however, she was laid off in 2007 and has not worked since. (Tr. 30, 130-31).

Adams alleges disability primarily as a result of sarcoidosis, asthma, sciatica, hypertension, thyroid disease, and depression. (Tr. 129, 150). She testified that she has difficulty breathing and uses a nebulizer and inhalers every day. (Tr. 31). She claims her blood pressure is not controlled, and says she gets headaches and tingling when it is elevated. (Tr. 32). Her sciatica causes back pain, which radiates down her left leg. (Tr. 33). In addition, Adams suffers from depression; however, she testified that she had not been undergoing mental health

treatment because she lacked insurance for a period of time. (Tr. 33). She takes numerous medications for her conditions, which allegedly cause drowsiness and require her to urinate frequently. (Tr. 37-38, 43-44). She testified that she can walk approximately one block before she gets short of breath; can sit for 25-30 minutes before her back and legs hurt; and cannot lift even a gallon of milk. (Tr. 39-40).

In terms of daily activities, Adams watches television and uses her iPad. (Tr. 42). She is able to bathe and dress herself, prepare simple meals, and shop in stores, but her son and grandson assist her with laundry and housecleaning. (Tr. 42-43, 151-52). She has a driver's license but does not have access to a car; she relies on her son and her brother to drive her to doctors' appointments. (Tr. 28). Adams no longer attends church because she "can't really get out and function too well" and is no longer able to engage in hobbies she previously enjoyed, such as ceramics, walking, and dancing. (Tr. 45, 154). However, she has no difficulty getting along with others and is able to pay bills and handle a checking account. (Tr. 41, 153, 155).

### 2. *Medical Evidence*

The Court has thoroughly reviewed Adams' medical record. In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

### 3. *Vocational Expert's Testimony*

Annette Holder testified as an independent vocational expert ("VE") at the administrative hearing. (Tr. 49-58). The ALJ asked the VE to imagine a claimant of Adams' age, education, and work experience who can lift, carry, push, and pull up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk for 6 hours in an 8-hour workday, and sit for at least 6 hours in an 8-hour workday, with the following additional limitations: no reaching overhead;

occasional climbing of ramps and stairs, stooping, and crouching; frequent balancing; no crawling, kneeling, or climbing ladders or scaffolds; must avoid even moderate exposure to pulmonary irritants; limited to simple, routine, and repetitive unskilled tasks, free of fast-paced production requirements, with few (if any) workplace changes and no more than simple work-related decisions; and no interaction with the public. (Tr. 51-52). The VE testified that the hypothetical individual would not be capable of performing any of Adams' past relevant work. (*Id.*). However, the VE further testified that the hypothetical individual would be capable of working in the jobs of bench assembler (250,000 jobs in the national economy), inspector (200,000 jobs), and packer (240,000 jobs). (Tr. 52-53).

D.    The ALJ's Findings

At Step One of the five-step sequential analysis, the ALJ found that Adams did not engage in substantial gainful activity between May 1, 2010 (the alleged onset date) and December 31, 2012 (the date last insured). (Tr. 10). At Step Two, the ALJ found that Adams has the severe impairments of sarcoidosis, essential hypertension, asthma, affective disorder, hypothyroidism, sciatica, bilateral knee osteoarthritis, left rotator cuff tendinitis, and obesity. (*Id.*). At Step Three, the ALJ found that Adams' impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 11).

The ALJ then assessed Adams' residual functional capacity ("RFC"), concluding that she can lift, carry, push, and pull up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk for 6 hours in an 8-hour workday, and sit for at least 6 hours in an 8-hour workday, with the following additional limitations: no reaching overhead; occasional climbing of ramps and stairs, stooping, and crouching; frequent balancing; no crawling, kneeling, or climbing ladders or scaffolds; must avoid even moderate exposure to pulmonary irritants; limited to

simple, routine, and repetitive unskilled tasks, free of fast-paced production requirements, with few (if any) workplace changes and no more than simple work-related decisions; and no interaction with the public. (Tr. 13).

At Step Four, the ALJ determined that, through her date last insured, Adams was unable to perform any of her past relevant work. (Tr. 17). At Step Five, the ALJ concluded, based in part on the VE's testimony, that, through her date last insured, Adams was capable of performing a significant number of jobs that exist in the national economy. (Tr. 18). As a result, he found that Adams was not disabled under the Act prior to her date last insured. (Tr. 19).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide

questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

## F.     Analysis

In her motion, Adams argues that the ALJ erred by (1) not having her evaluated by a pulmonary specialist; (2) not affording appropriate weight to the opinion of consultative physician Atul Shah, M.D.; and (3) failing to provide an accurate hypothetical to the VE. (Doc.

#19 at 6-9).  Each of these arguments is discussed below.

1.    *The ALJ Was Not Required to Have Adams Examined
by a Pulmonary Specialist to Evaluate Her Sarcoidosis*

In her first argument, which consists of only a single sentence, Adams asserts that the ALJ erred in failing to have her evaluated by a pulmonary specialist, claiming:

> … had Plaintiff been evaluated by a Pulmonary Specialist, the Administrative Law Judge would have understood the impact of Plaintiff's sarcoidosis on her activities of daily living and how this condition would impact on her ability to work at a sustained competitive basis.

(*Id.* at 6).  This is the entirety of Adams' argument in this respect – she does not explain *how* her sarcoidosis impacts her activities of daily living, nor does she accompany her argument with any citation to the record.  For that reason alone, this argument should be deemed waived.  *See, e.g., McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to … put flesh on its bones.") (internal quotations omitted).

Moreover, even if the Court were to address the substance of this argument, it is without merit.  The ALJ found Adams' sarcoidosis to be a severe impairment at Step Two and addressed this impairment – along with her asthma – in his RFC analysis.  (Tr. 10, 13-14).  Specifically, the ALJ thoroughly discussed the medical evidence related to Adams' respiratory impairments – which consistently showed that her conditions were stable – and made a negative finding regarding the credibility of Adams' subjective complaints, stating:

> Beginning with the claimant's breathing allegations, the undersigned finds the claimant's allegations not fully credible.[2]  The claimant's thorax CT scan on June 19, 2008 was suspicious for an inflammatory or chronic

---

[2] Significantly, Adams has not challenged the ALJ's credibility finding and, thus, any such challenge is waived.  *See McPherson*, 125 F.3d at 995-96.

granulomatous disease such as sarcoidosis [Tr. 244]. The claimant's sarcoidosis was confirmed in 2009 on biopsy of the claimant's lung lesion [Tr. 173]. Despite being off all of her medications, on May 24, 2010, the claimant's asthma was stable and her sarcoidosis was asymptomatic [Tr. 352]. In fact, throughout the record, with the exception of one asthma exacerbation in July 2010 when her home nebulizer machine malfunctioned, the claimant's sarcoidosis and asthma are consistently reported as stable [Tr. 230; *see, e.g.,* Tr. 181, 217, 218, 219, 221]. The claimant reported no shortness of breath on August 16, 2012, November 14, 2011, October 10, 2011, July 29, 2011, May 6, 2011, and April 11, 2011 [Tr. 269, 270, 274, 277, 281, 282, 287, 288, 290, 301, 302, 303, 307, 308, 309]. To address the claimant's respiratory impairments, the undersigned limited the claimant's exposure to pulmonary irritants.

(Tr. 13-14 (footnote added)). Substantial evidence supports the ALJ's assessment of the medical evidence related to Adams' respiratory impairments (including sarcoidosis), and the ALJ clearly considered this evidence in formulating Adams' RFC (requiring that she avoid even moderate exposure to pulmonary irritants).[3] (Tr. 13).

To the extent Adams argues that the ALJ was required to obtain a consultative examination by a pulmonary specialist, such an argument fails. The applicable regulation provides that a consultative examination *may* be obtained "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim." 20 C.F.R. §404.1519a(b). Here, there was sufficient evidence regarding Adams' sarcoidosis for the ALJ to make a determination as to her respiratory impairments, and Adams has pointed to no evidence suggesting otherwise.[4] Thus, the Court

---

[3] In formulating Adams' RFC, the ALJ gave substantial weight to the opinion of state agency physician Muhammad Khalid, M.D., who determined that Adams was capable of performing light work, with only occasional postural activities, and that she should avoid even moderate exposure to pulmonary irritants. (Tr. 16 (citing Tr. 62-74)). Adams has not challenged the ALJ's reliance on Dr. Khalid's medical opinion.

[4] Indeed, in her pre-hearing submission, Adams indicated that her "active [s]arcoidosis and asthma are controlled with medication," but, due to diminished pulmonary function, "she must avoid toxins, fumes, smoke and dust." (Tr. 165). The ALJ took these facts into consideration, requiring that Adams must avoid even moderate exposure to pulmonary irritants. (Tr. 13).

finds no error in this respect.  *See, e.g., Robertson v. Comm'r of Soc. Sec.*, 513 F. App'x 439, 441 (6th Cir. 2013) (ALJ was not obligated to order a consultative examination due to "the considerable amount of medical evidence in the record" and "the lack of any significant inconsistencies in the evidence").

### 2.    *Substantial Evidence Supports the ALJ's Evaluation of Dr. Shah's Opinion*

Adams also argues that the ALJ erred in analyzing the opinion of consultative examining physician Atul Shah, M.D.  (Doc. #9 at 6-8).  Dr. Shah examined Adams on December 10, 2012, noting that she had not worked since 2007 and that she complained of progressively worsening depression since that time.  (Tr. 420).  Adams also reported "anxiety attacks for the last two to three years," which lasted 20-30 minutes at a time and occurred as often as five times a week. (Tr. 421).  Dr. Shah further noted Adams' report that she had received mental health treatment in 2008 but lost her insurance in 2009 and had not seen a psychiatrist or psychologist since that time.  (*Id.*).   On mental status examination, Adams was fully oriented with fair insight, spontaneous and organized speech, and a blunted affect.  (Tr. 421-22).  Dr. Shah assigned a Global Assessment of Functioning ("GAF")[5] score of 65 and opined as follows:

> Based upon today's examination, the claimant has major depressive disorder, recurrent in partial remission and panic disorder, chronic which interferes with her ability to interact with the public and coworkers.  She has decreased capacity for interaction due to these conditions and the pressure of employment could be a major factor[] in decompensation on her part at this time.

(Tr. 422-23).

The ALJ discussed Dr. Shah's examination findings, ultimately affording his opinion

---

[5]  GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations.  *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009).

little weight. (Tr. 17). In reaching this conclusion, the ALJ specifically noted that "Dr. Shah's diagnosis of panic disorder was based solely on [Adams'] subjective complaints," that Adams "did not report [] isolation or panic attacks to her treating physician," and that "Dr. Shah's opinion was based on these subjective reports, which are not consistent with [Adams'] treatment record or function report."[6] (*Id.*). Earlier in the decision, the ALJ discussed Adams' depression symptoms, first noted in February 2011, which appeared to stabilize over time (as depression was not mentioned from July 2011 until August 2012, when Adams reported feelings of depression following the death of her mother and other personal losses but did not want her antidepressant medication increased). (Tr. 15 (citing, *inter alia*, Tr. 269, 271)).

Adams appears to advance three challenges to the ALJ's evaluation of Dr. Shah's opinion. First, Adams argues that the ALJ "failed to consider" Dr. Shah's opinion that she "suffered with two psychiatric disorders." (Doc. #19 at 7). As set forth above, this is incorrect; the ALJ thoroughly analyzed Dr. Shah's opinion and properly afforded it little weight. (Tr. 17). Moreover, the ALJ did not disregard Dr. Shah's opinion entirely; indeed, he incorporated into the RFC several limitations related to Adams' mental impairments, saying:

> To address the claimant's moderate difficulties in concentration, persistence, or pace, the undersigned limited the claimant to simple routine and repetitive unskilled tasks …, free of fast based production requirements with few, if any work place changes and no more than simple work related decisions. The undersigned further eliminated interaction with the public as to avoid any undue stress.

(Tr. 16). Thus, to the extent Dr. Shah opined that Adams had decreased capacity for interaction

_____

[6] Because Dr. Shah's findings regarding a panic disorder were based on Adams' subjective complaints, which the ALJ properly found not fully credible (a finding Adams does not challenge), the ALJ did not err in affording the opinion little weight. *See, e.g., Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 156 (6th Cir. 2009) ("Here, substantial evidence supports the ALJ's determination that the opinion of Dr. Boyd, Poe's treating physician, was not entitled to deference because it was based on Poe's subjective complaints, rather than objective medical data.").

with the public, the ALJ's mental RFC finding expressly addresses such a limitation.[7]

Adams also argues – somewhat confusingly – that the "opinion of a medical source, especially a specialist, a Board Certified Psychiatrist[8] must be given controlling weight in the absence of evidence contradicting his opinions" and that the ALJ "misapplied" 20 C.F.R. §404.1527(c)(5) "when he failed to give controlling weight" to Dr. Shah's opinion." (Doc. #19 at 7 (footnote added)). This argument fails for several reasons.

First, although Adams suggests that "controlling weight" was due Dr. Shah's opinion under the treating physician rule, that is incorrect, as Dr. Shah was an examining (versus a treating) physician. *See Kornecky*, 167 F. App'x at 506-07 (one-time examining physician is not considered a treating physician for purposes of application of the treating physician rule) (collecting cases).

Second, contrary to Adams' suggestion, the ALJ considered the relevant factors set forth in 20 C.F.R. §404.1527(c) in determining the weight to be afforded Dr. Shah's opinion. Specifically, he considered the nature of the relationship between Adams and Dr. Shah (noting that Dr. Shah conducted a one-time consultative examination); the supportability of the opinion (explaining that Dr. Shah's diagnosis of a panic disorder was based solely on Adams' subjective reports, which were not reflected in treatment notes); and the consistency of the opinion with other evidence of record (noting that Dr. Shah's findings were "not consistent with [Adams'] treatment record or function report"). (Tr. 17). Although the ALJ did not expressly identify Dr.

_____

[7] While the ALJ did not incorporate any limitation related to interaction with coworkers, he noted that Adams indicated in both her function report and at the hearing that she had no problems getting along with others and got along with authority figures very well. (Tr. 12 (citing Tr. 150-57)). Thus, where there is no evidence in the record that Adams had difficulty with coworkers, the ALJ did not err in declining to include such a limitation in the RFC.

[8] As the Commissioner correctly notes, Adams provides no support for her assertion that Dr. Shah is a "Board Certified Psychiatrist." (Doc. #23 at 18 n.6).

Shah's specialty, there is no indication that his specialty (or lack thereof) played any role in the ALJ's decision to discount his opinion. Moreover, "there is no per se rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. §404.1527(c)." *Biestek v. Comm'r of Soc. Sec.*, 2017 WL 1214456, at *7 (E.D. Mich. Feb. 24, 2017) (citing cases). Thus, the Court finds no error in this respect.

Finally, Adams argues that the ALJ erred "when he utilized his own opinion as the medical source," rather than relying on Dr. Shah's opinion. (Doc. #19 at 6). But this argument simply misapprehends the law. The Social Security Act provides that it is the responsibility of the ALJ – not a physician – to determine a claimant's RFC, and "[a]n ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). In this case, in determining Adams' RFC, the ALJ considered and provided a detailed analysis of the medical evidence regarding Adams' mental impairment. (Tr. 15 (citing Tr. 269, 271, 295, 297, 301, 303, 307, 309, 319, 321, 334, 347)). In addition, the ALJ considered Dr. Shah's opinion and although he assigned it little weight, he formulated an RFC that provided limitations expressly accounting for Adams' moderate difficulties in concentration, persistence, or pace, as well as her limitations in dealing with the public. (Tr. 13, 16). Thus, the Court finds no error warranting remand in the ALJ's evaluation of Dr. Shah's opinion and/or his formulation of Adams' mental RFC.

### 3. The ALJ's Hypothetical to the VE Was Adequate

Adams also argues that the ALJ failed to provide the VE "with the critical information contained in Dr. Shah's report so the vocational expert could accurately indicate whether the Plaintiff had the residual functional capacity to perform unskilled lite [sic] work." (Doc. #19 at

9).  Although Adams phrases this as a Step Five challenge, it is clear that, because the ALJ's RFC finding (Tr. 13) is identical to the hypothetical question he posed to the VE (Tr. 51-52), Adams is actually attempting to challenge the RFC finding via a purported Step Five error.  *See Kirchner v. Colvin*, 2013 WL 5913972, at *11 (E.D. Mich. Nov. 4, 2013) ("Kirchner's Step Five argument is a veiled attack on the ALJ's underlying RFC finding" because "this is not a scenario where the ALJ's hypothetical failed to match up to the RFC he ultimately imposed.").  As set forth above, however, the ALJ's assessment of the medical evidence and subsequent RFC finding are supported by substantial evidence.  Accordingly, Adams' argument that the ALJ provided the VE with an inaccurate hypothetical lacks merit.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

## III.    CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [23] be GRANTED, Adams' Motion for Summary Judgment [19] be DENIED, and the ALJ's decision be AFFIRMED.


Dated: April 20, 2017                              s/David R. Grand
Ann Arbor, Michigan                          DAVID R. GRAND
                                                            United States Magistrate Judge


## NOTICE REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140

(1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 20, 2017.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager